FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LAURIE F.,[1]

               Plaintiff,

      v.

ANDREW M. SAUL, the Commissioner
of Social Security,

               Defendant.

No.   4:19-CV-5174-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Laurie F. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) discounting Plaintiff's symptom reports; 2) improperly weighing the medical opinions; and 3) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies the Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.     Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

economy—in light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II. Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of July 21, 2012.[18] Her claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Donna Walker.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 213-14.

[19] AR 106-12 & 114-19.

[20] AR 34-72.

- Step one: Plaintiff had not engaged in substantial gainful activity since July 12, 2012, the alleged onset date, through her date last insured of June 30, 2017;

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the cervical and lumbar spine, chronic obstructive pulmonary disease (COPD), asthma, portal hypertension, obesity, depression, anxiety, post-traumatic stress disorder (PTSD), and substance addiction disorder in remission;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform less than the full range of light work:

  > [Plaintiff] can only frequently balance; occasionally climb ramps or stairs, kneel, stoop (defined as bending at the waist), crouch (defined as bending at the knees), and crawl; however, she should never climb ladders, ropes or scaffolds. [Plaintiff] should never be exposed to dangerous machinery or unprotected heights. Regarding her mental abilities, [Plaintiff] has the ability to understand, remember or apply information that is simple and routine, commensurate with a specific vocational preparation (SVP) three level work. Regarding her interaction with others, [Plaintiff] has the ability to work in proximity to, but not in collaboration with, co-workers and supervisors; and she must work in an environment away from the public. Regarding her ability to concentrate, persist or maintain pace, [Plaintiff] has the ability, with legally required breaks, to focus attention on work activities and stay on task at a sustained rate; complete tasks in a timely manner; sustain an ordinary routine; regularly attend work; and work a full day without

needing more than the allotted number or length of rest periods. Regarding her ability to adapt or manage, [Plaintiff] has the ability to respond appropriately, distinguish between acceptable and unacceptable work performance, or be aware of normal hazards and take appropriate precautions.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as office helper, food sorter, and small parts assembler.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great or significant weight to the opinions of the State agency psychological reviewers Bruce Eather, Ph.D. and Michael Regets, Ph.D.; the State agency medical reviewer Donna LaVallie, D.O.; the testifying medical expert James McKenna, M.D.; and treating counselor Amy Rieck, LICSW; and

- little weight to the treating opinion of Serena Williams, ARNP and the opinions issued for State Department of Labor and Industries' purposes.[22]

---

[21] AR 12-33.

[22] AR 19-22.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[23] AR 20-21.

[24] AR 1-6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

### A.    Plaintiff's Symptom Reports: Plaintiff establishes consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. The Court agrees.

---

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[33] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[34] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the "medical evidence and other evidence in the record."[35]

Assuming that the ALJ's decision that Plaintiff's reported physical and mental-health symptoms are inconsistent with the medical evidence,[36] this factor

---

[33] *Molina*, 674 F.3d at 1112.

[34] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[35] AR 21.

[36] Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. § 404.1502(f). Evidence obtained from the application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical

cannot serve as the sole basis to discount Plaintiff's reported symptoms of pain, memory loss, and other subjective symptoms.[37] For instance, imaging confirmed that Plaintiff had mild anterolisthesis of C4-5 and bulging annulus with mild to moderate spinal stenosis at C5-6.[38] Because there was objective evidence of an impairment that was expected to produce pain, the ALJ was not permitted to reject Plaintiff's symptom reports merely because her subjective reports were purportedly inconsistent with the medical evidence.[39] But here that is the sole basis the ALJ relied on, as the ALJ did not articulate what "other evidence" was inconsistent with Plaintiff's symptom reports.

For instance, the ALJ did not address whether Plaintiff's extent of treatment was comparable to the degree of her complaints, or whether she failed to follow prescribed treatment that might improve her symptoms, or whether her daily living activities were inconsistent with her reported symptoms, or whether her

_____

evidence. 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[37] SSR 16-3p.

[38] AR 429.

[39] *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (recognizing that the severity of pain may not be fully corroborated by medical evidence); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989);

reported symptoms during the administrative proceeding were inconsistent with those she reported to providers.[40] The ALJ simply stated there was "other evidence in the record," beyond the medical evidence, that was inconsistent with Plaintiff's reported symptoms. The ALJ must do more than make this general finding—the ALJ must provide specific, clear, and convincing reasons supported by substantial evidence.

The Commissioner relies on *Parra v. Astrue*[41] to argue that the ALJ's decision to discount Plaintiff's reported symptoms was supported by substantial evidence because the ALJ identified specific medical evidence, including numerous medical reports, that were inconsistent with the claimant's symptom testimony. But the ALJ in *Parra* relied on both the objective medical evidence as being inconsistent with the claimant's testimony about his bursitis pain and also that the claimant's physical ailments were effectively treated with an over-the counter pain medication.[42] Therefore, the ALJ in *Parra* relied on more than simply an inconsistency between the claimant's symptom testimony and the medical evidence. Likewise, in *Molina v. Astrue*,[43] the ALJ relied on the claimant's

---

[40] *Cf. Rollins*, 261 F.3d at 857 (finding that the ALJ also relied on the claimant's activities of daily living as being inconsistent with her claim of disabling pain).

[41] 481 F.3d 742, 750 (9th Cir. 2007).

[42] *Id*. at 750-51.

[43] 674 F.3d 1104, 1111 (9th Cir. 2012).

activities of daily living and failure to seek or follow prescribed treatment, in addition to the claimant's allegations being inconsistent with the observations of the psychologist and the opinions of that psychologist and an examining physician, to discount the claimant's symptom testimony.[44]

Here, without the ALJ articulating what "other evidence in the record" the ALJ found inconsistent with Plaintiff's reported symptoms, the Court is unable to meaningfully assess whether the ALJ's decision to discount Plaintiff's reported disabling symptoms is supported by clear and convincing reasons. While the two reviewing psychological opinions were inconsistent with Plaintiff's reports of being unable to focus and maintain concentration, these opinions were based solely on a review of the medical evidence and therefore relying on these two reviewing psychological opinions as a basis to discount Plaintiff's reported disabling symptoms is an end-around the rule requiring that the ALJ identify *another* clear and convincing reason, other than the medical evidence, to discount the claimant's reported symptoms.

The ALJ also gave weight to the December 2012 opinion of Amy Rieck, LICSW, a counselor who treated Plaintiff and who opined that Plaintiff cannot work as a bartender.[45] This opinion is limited in scope in that Ms. Rieck only offered an opinion as to whether Plaintiff could return to her former line of work,

---

[44] *Molina*, 674 F.3d at 1113-14.

[45] AR 23.

rather than a broader opinion as to whether Plaintiff was able to work at all. And to the extent it was offered, the opinion was consistent with Plaintiff's claimed inability to work.[46]

Because the ALJ failed to articulate findings as to what "other evidence in the record" was inconsistent with Plaintiff's reported symptoms, the ALJ failed to provide sufficient clear and convincing reasons to discount Plaintiff's reported symptoms. Remand is required.

**B.  Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff challenges the ALJ's weighing of the medical opinions, including the opinions of Serena Williams, ARNP; Scott Whitemarsh, D.C.; Mark Johnson, PT; Peter Ashford, OT; Donald Williams, M.D.; and Patricia Luckey, ARNP/CNS. Plaintiff also challenges the ALJ's failure to receive testimony from Sally Clayton, Ph.D. during the administrative hearing.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[47] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both

---

[46] AR 900.

[47] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[48]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence.[49] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[50] may be rejected for specific and germane reasons supported by substantial evidence.[51] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[52]

---

[48] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[49] *Lester*, 81 F.3d at 830.

[50] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[51] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[52] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

As discussed below, the Court finds Plaintiff establishes that the ALJ erred when weighing the medical opinions.

### 1. Mark Johnson, PT

In May 2017, Mr. Johnson prepared a functional capacity evaluation at the request of Plaintiff's treating provider, Nurse Serena Williams.[53] Mr. Johnson found that Plaintiff had slight limitations with spinal and extremity range of movement, occasionally impaired sensation in both hands and left upper extremity, mild postural dysfunction, antalgic gait pattern, limited tolerance for prolonged ambulation up to six minutes, limited tolerance for forward flexed trunk posture, and limited ability to maintain a crouched position due to balance impairments. Mr. Johnson opined that Plaintiff had a good tolerance for prolonged sitting up to 30 minutes, was able to carry up to 17.5 pounds a distance of 50 feet, was able to lift up to 11.5 pounds from waist-to-floor and up to 13 pounds from waist-to-crown, had a good tolerance for standing work tasks up to thirty minutes, and had a good tolerance for kneeling and half-kneeling up to ten minutes.

The ALJ did not mention Mr. Johnson's opinion. This was error. Mr. Johnson's opinion contained specific limitations about Plaintiff's physical ability to work.[54] Even though Mr. Johnson, as a physical therapist, is considered an "other"

---

[53] AR 1059-66.

[54] *Cf. Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that because the physician's report did not assign any specific

medical source, rather than an acceptable medical source, the ALJ was required to use this "other" medical source opinion in determining the severity of Plaintiff's impairments and how they affect her ability to work."[55] The ALJ may not reject the competent opinions of "other" medical sources without giving specific "reasons germane to each witness for doing so."[56]

The ALJ discounted "several evaluations that were performed for the purpose of the Department of Labor and Industries [(L&I] rating for worker's compensation purposes."[57] But Mr. Johnson's opinion was not one of the evaluations cited by the ALJ in this paragraph. Regardless, it appears that Mr. Johnson's opinion was issued for Social Security purposes as he noted "[e]valuation to determine functional abilities and limitations and to assist her MD with completion of paperwork related to long-term disability."[58] Moreover, the ALJ

---

limitations about the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions").

[55] 20 C.F.R. § 404.1527(f); *Turner*, 613 F.3d at 1224; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[56] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Molina*, 674 F.3d at 1111 (quoting *Turner*, 613 F.3d at 1224).

[57] AR 22.

[58] AR 1059.

discounted the cited L&I evaluations because they did not include a function-by-function analysis and because the L&I rating system is different from Social Security's criteria for disability. That an evaluation was prepared for L&I purposes is not a reason by itself to discount the evaluation if it contains information about the Plaintiff's functional limitations.[59] And as discussed above, Mr. Johnson's opinion contained specific limitations about Plaintiff's physical ability to work. Therefore, the ALJ was required to consider Mr. Johnson's opinion and, if discounting it, give germane reasons for doing so. The ALJ failed to do so.

The Commissioner argues that any error was harmless because Mr. Johnson's opinion was inconsistent with his examination notes. The Court recognizes that it must consider whether the ALJ's reasoning for other witnesses applies to Mr. Johnson's undisclosed opinion in order to assess whether this error was consequential to the ultimate nondisability determination.[60] Because the ALJ did not cite to Mr. Johnson's evaluation and the testing performed by Mr. Johnson—results of which were more limiting than the lifting restriction contained in the RFC—and which were largely consistent with the carrying and lifting test results performed by Peter Ashford, OTR, and those opined by Nurse Williams, the

---

[59] *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (clarifying that the purpose for which a medical report was obtained does not provide a legitimate basis for rejecting it in the absence of other evidence undermining it).

[60] *Molina*, 674 F.3d at 1121.

Court is unable to determine that this error was harmless to the ALJ's overall interpretation of the record, which also included an erroneous weighing of Plaintiff's symptom reports.

On remand, the ALJ is to assign weight to Mr. Johnson's opinion.

2.  <u>Serena Williams, ARNP</u>

During the relevant time period, Nurse Williams was Plaintiff's treating provider.[61] In May 2017, following receipt of Mr. Johnson's functional capacity evaluation, Nurse Williams opined that Plaintiff was limited to sitting thirty minutes at one time and standing for thirty minutes at one time, would miss more than four days of work per month, and could only rarely lift and carry twenty pounds.[62]

The ALJ gave little weight to Nurse Williams' opinion because there was no objective evidence supporting the restrictive RFC, including Nurse Williams' own treatment records.[63]

The ALJ cited two treatment records, both within six weeks of each other during the entire relevant five-year period, in support of her finding. As the ALJ highlighted, the first cited treatment record noted that Plaintiff stated she "can

_____

[61] *See, e.g.*, AR 782-847, 1071-72, 1081-95, 1110-14, & 1117-34.

[62] AR 1067-68.

[63] AR 22.

walk and does not have problems."[64] However, the full context of this statement is "[Plaintiff] states she developed swelling and ankle pain bilaterally after [the functional capacity evaluation with Mr. Johnson three days before on May 16, 2017]. It's [sic] started going down. She can walk and doesn't have problems."[65] In addition, in this treatment note, Nurse Williams reports that Plaintiff struggles mentally when she is on lorazepam and has been experiencing hepatic encephalopathy, that she still feels tired, and has difficulty sleeping, and that Plaintiff was observed with tenderness in her right and left ankles and with a bright affect and that "she is much clearer than she has been."[66]

The second treatment record cited by the ALJ is from June 2017. The ALJ highlighted that Plaintiff had "normal pulmonary effort and breath sounds and normal range of motion except for decreased range of motion in her lumbar spine."[67] This record also states that Plaintiff "exhibits decreased range of [lumbar] motion (lateral bending, extension, flexion not limited but difficult coming up) and tenderness," with a positive straight-leg raise bilaterally, and that her anxiety was "very stable at this time."[68]

---

[64] AR 22 (citing AR 1251).

[65] AR 1251.

[66] AR 1251-52.

[67] AR 22 (citing AR 1258).

[68] AR 1258-59.

Before issuing her opinion, Nurse Williams also reviewed Mr. Johnson's evaluation, which opined that Plaintiff could tolerate standing tasks for up to thirty minutes and sitting for up to thirty minutes, along with other postural limitations.[69] Nurse Williams' opinion is largely consistent with Mr. Johnson's opinion and Mr. Ashford's opinion—a consistency the ALJ did not discuss as the ALJ did not discuss either Mr. Johnson's or Mr. Ashford's opinion (beyond a citation to the exhibit number that this opinion was part of).

The ALJ also discounted Nurse Williams' opinion because "there is no objective evidence that supports such a restrictive residual functional capacity" that Plaintiff be "limited to sedentary work and would miss more than four days of work per month."[70] However, the testing results of Mr. Johnson's and Mr. Ashford's functional evaluations constituted objective evidence that was largely consistent with Nurse Williams' lifting and carrying restrictions: restrictions that were not included in the RFC.

A medical opinion is to be evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.[71] Because the ALJ failed to consider Mr. Johnson's opinion, on which Nurse Williams relied,

---

[69] AR 1060.

[70] AR 22.

[71] *Lingenfelter*, 504 F.3d at 1042.

and failed to discuss the consistency of both these opinions with Mr. Ashford's opinion, the Court is unable to meaningfully assess whether the ALJ's finding that Nurse Williams' opinion is not supported by her treatment notes and the record as a whole is supported by substantial evidence.[72] On remand, the ALJ is to reweigh Nurse Williams' opinion.

3.    <u>Peter Ashford, OTR</u>

Occupational therapist Mr. Ashford evaluated Plaintiff's physical functional capacities in May 2015. Based on his testing, Mr. Ashford opined that Plaintiff was "functioning in the light category of manual labor," and that she could frequently sit and stand (defined as 33-66 percent of the time), occasionally reach, lift up to 12.5 pounds occasionally and up to six pounds frequently, and carry up to 15 pounds occasionally and 7.5 pounds frequently.[73]

---

[72] *See Nguyen v. Chater*, 100 F.3d 1362, 164 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[73] AR 641-42.

Mr. Ashford's opinion contained specific limitations about Plaintiff's physical ability to work—carrying and lifting limitations that were more restrictive than the RFC.[74] The ALJ assigned little weight to Mr. Ashford's opinion because it was performed for L&I purposes—with L&I having different criteria than Social Security's criteria for disability—and the opinion did not include a function-by-function analysis.[75]

An ALJ may not ignore opinions prepared for non-social security disability purposes but instead must translate the functional limitations expressed therein into Social Security terminology.[76] And the opinion must be weighed by applying the relevant factors.[77]

The ALJ did not weigh any factors but simply discounted the opinion for not including a function-by-function analysis. However, Mr. Ashford tested Plaintiff's ability to lift, carry, manipulate, sit, and stand and set those forth in his opinion. Mr. Ashford's opined lifting and carrying restrictions—like Mr. Johnson's and Nurse Williams' restrictions—are more restrictive than those contained in the

---

[74] 20 C.F.R. § 404.1567 (defining light work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds").

[75] AR 22.

[76] *Reddick*, 157 F.3d at 726.

[77] *See* 20 C.F.R. § 404.1527(c) (factors considered in weighing medical opinions).

RFC. On remand, the ALJ is to address Mr. Ashford's opinion and, if necessary, provide germane reasons, supported by substantial evidence, to discount this opinion.

    4.   <u>Scott Whitemarsh, D.C.</u>

From August 2012 to 2013, Chiropractor Whitemarsh treated Plaintiff approximately twenty times.[78] He observed reduced range of movement in her cervical and lumbar spine and positive straight leg raises. In August 2012, Dr. Whitemarsh opined that Plaintiff was unable to work from July 31, 2012, to November 1, 2012.[79] In January 2013, Dr. Whitemarsh opined that Plaintiff's condition had reached maximum medical improvement with some mild improvements possibly occurring over time, and that she should stand no more than one hour (with five minutes of sitting), sit for no more than one hour (with five minutes of standing or walking), and lift less than twenty pounds frequently.[80] Dr. Whitemarsh also treated Plaintiff in December 2015 through February 2016.[81] In February 2016, Dr. Whitemarsh issued a letter and opined, "I see no physical reason that she could not perform the tasks involved in the job summaries. Longer

---

[78] AR 848-99 & 902-10 (Oct. 2012 - Jan. 2013).

[79] AR 414.

[80] AR 911-12.

[81] AR 932, 995-999, 1000-01, & 1037-38.

shifts would mean more discomfort, but not more than is often the case for working individuals over the age of 50."[82]

The ALJ gave little weight to Dr. Whitemarsh's 2013 and 2016 opinions because they were offered for L&I purposes and did not include a function-by-function analysis.[83] The ALJ did not refer to Dr. Whitemarsh's 2012 opinion.

Plaintiff contends the ALJ erred by failing to "assign a weight analysis" to Dr. Whitemarsh's opinions. While an ALJ need not usually assign a weight to an opinion that indicates only a short-term inability to work, such as Dr. Whitemarsh's 2012 opinion, the ALJ on remand is to consider Dr. Whitemarsh's 2012 opinion as Dr. Whitemarsh issued his January 2013 opinion, which assigned functional limitations resulting from the same impairments, a mere two months after the expiration of the prior opined short-term of disability.[84]

As to Dr. Whitemarsh's 2013 opinion that Plaintiff needed to rotate between sitting and standing/walking for five minutes each hour, the ALJ's proffered

---

[82] AR 935.

[83] AR 22.

[84] *See* 20 C.F.R. § 404.1509 (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

reasons for assigning little weight to this opinion—that it was issued for L&I purposes and did not contain a function-by-function analysis—is not supported by substantial evidence. The 2013 opinion set forth functional limitations for Plaintiff's standing, sitting, lifting, and typing/repetitive motions. The 2013 opinion, as well as the underlying imaging and treatment records, discuss that Plaintiff has bulging at the C4-5, C5-6, and C6-7 intervertebral discs with minimal anterolisthesis of C4 on C5, disc bulging of L4-5 and L5-S1, annular fiber tearing and focal protrusion as L5-S1, and that Plaintiff's lumbar and cervical spine range of motion was reduced. Given the functional limitations expressed in Dr. Whitemarsh's 2013 opinion, for which there is supporting objective medical evidence, the ALJ's reasons for discounting Dr. Whitemarsh's opinion fail to offer enough explanation to permit the Court to assess whether the discounting was rational and supported by substantial evidence.[85]

Yet, Plaintiff fails to establish the ALJ erred as to Dr. Whitemarsh's 2016 opinion, because in 2016 Dr. Whitemarsh opined that Plaintiff *could* physically perform the identified jobs.[86]

On remand, the ALJ is to consider Dr. Whitemarsh's 2012 and 2013 opinions to assess whether Plaintiff had physical limitations that were more restrictive than

---

[85] *Embrey*, 849 F.2d at 421-22; *Blakes,* 331 F.3d at 569.

[86] *Molina,* 674 F.3d at 1115 (An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination.").

the current RFC and then, in light of Dr. Whitemarsh's 2016 opinion, assess whether Plaintiff's physical limitations continued in their severity or improved.

### 5. Patricia Luckey, ARNP, CNS and C. Donald Williams, M.D.

In September 2013, Ms. Luckey conducted a psychiatric evaluation of Plaintiff.[87] She diagnosed Plaintiff with PTSD, alcohol abuse, and major depression. She recommended that Plaintiff receive alcohol treatment along with psychiatric treatment, medication for depression, and coping skills. She opined that Plaintiff was mentally unable to return to work.

In October 2013, Dr. Williams met with Plaintiff, reviewed Michael Friedman, D.O.'s 2013 psychiatric evaluation, and administered objective testing.[88] Dr. Williams diagnosed Plaintiff with PTSD, anxiety disorder, depressive disorder, and substance abuse dependence. He opined that Plaintiff needed to successfully complete an inpatient alcohol treatment program before she could participate in psychiatric treatment, which was necessary for her before she returned to work.

The ALJ discounted these opinions—and other evaluations performed for L&I purposes—because L&I has different criteria than Social Security's criteria for disability and the opinions did not include a function-by-function analysis.[89] As mentioned above, an ALJ may not ignore opinions prepared for non-Social Security

---

[87] AR 1097-1109.

[88] AR 476-85 & 756-74.

[89] AR 22.

disability purposes but instead must translate the functional limitations expressed therein into Social Security terminology.[90] And a medical opinion that expresses functional limitations may not be disregarded merely because it does not include a complete function-by-function assessment. Rather, the opinion must be weighed by applying the relevant factors.[91]

On remand, the ALJ is to evaluate each of the medical opinions, which identify functional limitations, pursuant to the relevant factors.

## C.    RFC: The ALJ must reassess.

Plaintiff argues the ALJ failed to properly include all of her physical and mental limitations into the RFC. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."[92] The RFC hypothetical posed to the vocational expert must include "all of the claimant's functional limitations, both physical and mental" that are supported by the record.[93]

Because the ALJ erred in her weighing of Plaintiff's symptom reports and the medical opinions, the RFC and the hypothetical posed to the vocational expert were consequentially impacted.

---

[90] *See Reddick*, 157 F.3d at 726.

[91] *See* 20 C.F.R. § 404.1527 (factors considered in weighing medical opinions).

[92] *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[93] *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995).

**D. Remand for Further Proceedings**

Given the ALJ's errors, Plaintiff submits a remand for payment of benefits is warranted. However, on this record, which includes conflicting medical opinions, it is not clear that there is no work existing in significant numbers that Plaintiff can perform. Therefore, remand for further proceedings, rather than for an award of benefits, is necessary.[94]

On remand, the ALJ is to obtain testimony from a psychological medical examiner, then reevaluate the medical-opinion evidence and Plaintiff's symptom reports, and complete the sequential analysis, including if necessary, eliciting new testimony from a vocational expert. Moreover, the ALJ is to utilize Plaintiff's correct age category, i.e., the "closely approaching advanced age" category.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of

---

[94] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

Social Security for further proceedings consistent with this

recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order,

provide copies to all counsel, and close the file.

**DATED** this 24th  day of March 2020.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge